IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01682-LTB-MEH

MELISSA ZAWADZKI,

    Plaintiff,

v.

THE COMMUNITY HOSPITAL ASSOCIATION, d/b/a BOULDER COMMUNITY HOSPITAL,
a Colorado nonprofit corporation,
ERVYN MUNKS, M.D.,
CHARLES JONES, M.D., and
JOHN DOES, M.D., 103, whose true names are unknown,

    Defendants.

---

Civil Action No. 09-cv-02450-CMA

MELISSA ZAWADZKI,

    Plaintiff,

v.

THE UNITED STATES OF AMERICA,

    Defendant.

---

## ORDER ON MOTION TO COMPEL AND MOTION TO SEAL

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court are Plaintiff's Motion to Compel Discovery Responses From Defendant Boulder Community Hospital [filed June 8, 2010; docket #110] and Defendant Boulder Community Hospital's Motion to File Under Seal Exhibit in Support of Response to Motion to Compel [filed July 6, 2010; docket #118]. The matters are briefed and the Court finds that oral argument will not assist in the adjudication of the motions. For the reasons that follow, the Motion

to Compel is **granted in part and denied in part** and the Motion to Seal is **granted**.

**I.      Background**

The factual background of this case has been set forth in previous orders of the Court, and need not be repeated here. The current dispute arises from Defendant Boulder Community Hospital's (BCH) refusal to produce information and copies of certain documents to the Plaintiff. First, Plaintiff seeks notes from an investigation file, which BCH has characterized as protected from disclosure by the attorney-client privilege and work-product doctrine.[1] Plaintiff asserts that these documents, consisting of handwritten notes and written communications from an internal investigation, are not protected insofar as they contain facts, as opposed to communications by or to an attorney (attorney-client) or opinions, strategies or attorney notes (work product). BCH counters that the investigation was specifically requested in anticipation of litigation and contain attorney-client communications; therefore, the documents are confidential. BCH has provided to the Court copies of the challenged documents and requests that they be maintained under seal.

Second, the Plaintiff seeks copies of documents and information contained in the claim file belonging to BCH's insurance representative, COPIC. BCH contends it does not have custody or control over the file; therefore, it cannot produce the documents contained therein. Plaintiff counters that the insurance company is, essentially, a party to the litigation and should be subject to Rule 34.

Finally, Plaintiff seeks additional information in response to her propounded Interrogatories No. 7 (order to provide water bottle) and No. 15 (BCH's mitigation defense). BCH claims that its original responses are adequate.

The Court will address each challenge made in the motion to compel in turn and, based upon

---

[1] In its discovery responses, BCH also objected to disclosure of the documents based upon the "Quality Management privilege, HIPAA and other state and federal protections" [*see* docket #110 at 4]. However, BCH but makes no argument in the briefing supporting any privilege other than the attorney-client and work product doctrines.

its analysis, will proceed to determine whether to seal the requested documents.

## II. Motion to Compel

### A. Investigation Documents

The challenged documents consist of four pages of handwritten notes and three pages including written communications from Cathie Goodman, BCH Risk Manager, to attorney Steve Henson. BCH contends that these documents are protected from disclosure by the attorney-client privilege and work product doctrine.

The party asserting the attorney-client privilege or work product doctrine has the burden of establishing that either or both clearly apply to specific information or documents. *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999); *see also Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984). Thus, it is BCH's burden in this case to establish that the attorney-client privilege and work product doctrine clearly apply to the withheld investigation documents.

#### 1. Attorney-Client Privilege

The parties have cited both federal and state law with respect to this privilege; therefore, the Court must first determine whether federal or state law applies in this case.

Typically, in federal courts, federal common law governs the existence of privilege, unless state law supplies the rule of decision as to an element of the claim or defense. Fed. R. Evid. 501. In this Court, when federal law governs the rule of decision, federal common law, as opposed to state law, governs the existence of privileges. *See Cutting v. United States,* No. 07-02053-REB-MEH, 2008 WL 1775278, at *2 (D. Colo. Apr. 14, 2008) (unpublished decision). Although this case involves both federal and state claims, the Advisory Committee Notes to Rule 501 provide that, in nondiversity cases such as this, the federal law of privilege applies. *See* Fed. R. Evid. 501 committee note ("It is also intended that the Federal law of privileges should be applied with respect

to pendent State law claims when they arise in a Federal question case."); *see also Hancock v. Hobbs,* 967 F.2d 462, 467 (11th Cir. 1992) ("We therefore hold that the federal law of privilege [applies in a federal question case], even if the [discovery] is relevant to a pendent state law count which may be controlled by a contrary state law of privilege."); *Wm. T. Thompson Co. v. Gen'l Nutrition Corp.,* 671 F.2d 100, 104 (3d Cir. 1982) (noting that when privilege issue overlaps with federal and pendent state law claims, federal rule in favor of admissibility controls). Moreover, district courts in the Tenth Circuit have held that federal common law applies to the issue of privilege in FTCA cases. *E.g., Bethel v. United States*, No. 05-1336-PSF-KLM, 2008 WL 45382, *6 (D. Colo. Jan. 2, 2008) (unpublished) ("In cases like this one, brought under the Federal Tort Claims Act, federal common law governs the application of privilege") (citing *Beller v. United States*, 221 F.R.D. 679, 681 (D.N.M. 2003) (citing cases)).

With these principles in the mind, the Court finds that federal common law applies to the privilege issue in this case. Under federal common law, the attorney-client privilege arises (1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) unless the protection is waived. *See Williams v. Sprint/United Management Co.,* No. 03-2200-JWL-DJW, 2006 WL 266599, at *2 (D. Kan. Feb. 1, 2006) (unpublished). The doctrine protects communications made in confidence between the client and attorney from discovery, but it does not protect the underlying facts contained within those communications. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). To be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client. *Id.*

Here, BCH provided copies of the challenged documents to the Court for *in camera* review

4

arguing that three of the pages contain direct communications between an attorney, Mr. Henson, and a representative of his client, Ms. Goodman, and are, therefore, privileged. The Court finds that the pages Bates-numbered Zawa-000076 and Zawa-000077 are direct communications from Ms. Goodman to Mr. Hensen and are protected from disclosure. The Motion to Compel production of these pages is **denied**. However, the page numbered Zawa-000078 contains communications among Ms. Goodman, "Karen" and "Vicki Lemmon." BCH has not identified "Karen" or Vicki Lemmon as attorneys; therefore, BCH has failed to establish that the communications are privileged attorney-client communications.

With respect to the handwritten notes from the investigation, the Court finds that, although Mr. Henson appears to be a participant in an interview, there appear to be no communications between a BCH representative and Mr. Henson noted in these documents. Therefore, BCH has failed to demonstrate the notes are protected as attorney-client confidential communications.

        2.    Work Product Doctrine

Again, the parties have cited both federal and Colorado cases concerning the work product doctrine. However, "[u]nlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Frontier Refining Inc. v. Gorman-Rupp Company, Inc.,* 136 F.3d 695, 702 n.10 (10th Cir. 1998) (internal quotation omitted). To be subject to the work product immunity the materials must have been prepared "in anticipation of litigation or trial; the doctrine does not protect from discovery materials prepared in the ordinary course of business." *Weitzman v. Blazing Pedals, Inc.,* 151 F.R.D. 125, 126 (D. Colo. 1993). Thus, to receive protection under the work product doctrine, the party resisting discovery "must demonstrate that the documents at issue were prepared in anticipation of litigation by or for [the party] or by or for [the party's] representative." *Wikel v. Wal-Mart Stores,*

5

*Inc.,* 197 F.R.D. 493, 495 (N.D. Okla. 2000); *see also Pepsico, Inc. v. Baird, Kurtz & Dobson LLP,* 305 F.3d 813, 817 (8th Cir. 2002) (stating that "[i]n order to protect work product, the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the *prospect* of litigation") (emphasis added).

The court in *Martin v. Monfort, Inc.,* 150 F.R.D. 172 (D. Colo. 1993), sets forth a process to be employed in deciding a claim for work product protection:

> Rule 26(b)(3) ... contemplates a sequential step approach to resolving work product issues. First, the party seeking discovery must show that the subject documents or tangible things are relevant to the subject matter involved in the pending litigation and are not privileged. Once such a showing has been made, the burden shifts to the party seeking protection to show that the requested materials were prepared in anticipation of litigation or for trial by or for the party or the party's attorney, consultant, surety, indemnitor, insurer or agent. Such a showing may be made by affidavit, deposition testimony, answers to interrogatories, and the like. If the Court concludes that the items were prepared in anticipation of litigation, the burden shifts back to the requesting party to show: (a) a substantial need for the materials in the preparation of the party's case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means. Finally, even if substantial need and unavailability are demonstrated, the Court must distinguish between factual work product, and mental impressions, opinions, and conclusions, for the latter are rarely, if ever, subject to discovery.

*Id.* at 172-73 (internal citations omitted).

Here, BCH contends that the challenged documents are protected by the work product doctrine in that they were prepared in anticipation of litigation following a letter dated April 26, 2007 from Mr. Hensen to Ms. Goodman seeking her assistance: "In light of the likelihood of litigation in this matter, it is important that you initiate an investigation to assist us in the defense of BCH." *See* docket #117-6.

First, BCH has failed to demonstrate that page Zawa-000078 is protected work product. Although the communications were made two years after the "initiation" letter, there is no indication that the communications were made by or for BCH or Mr. Hensen in anticipation of trial. Moreover, BCH has not argued the document contains, and there appears to be no risk of disclosing, an

attorney's mental impressions, opinions or conclusions. Therefore, the Court **grants** the Motion to Compel and concludes that BCH must disclose a copy of page Zawa-000078 to the Plaintiff.

With respect to the handwritten notes of the investigation, no one disputes that the notes were taken during the course of an investigation shortly following the April 26, 2007 initiation letter. However, Plaintiff contends that BCH would have conducted the investigation through its Risk Management department (Ms. Goodman) in the ordinary course of business regardless of Mr. Hensen's request. The Court disagrees in this case; unlike an "ordinary" investigation, the documents reflect that Mr. Hensen appears to have been directly involved in the investigation for the purpose of preparing a defense for BCH. Therefore, the Court finds that BCH has demonstrated the investigation notes were prepared because of the prospect of, and in anticipation of, litigation.

However, the issue is not yet resolved. Plaintiff argues she has a substantial need for the investigation notes, since there is no other "contemporaneous" record of the events of April 17-18, 2007. The Plaintiff presumes the notes were generated at an "investigation" meeting at which several members of the Plaintiff's health care providers were present and discussed her injury. Plaintiff contends that, although she has taken the depositions of those persons present at the meeting, all have testified they have little or no memory of the meeting and, therefore, the Plaintiff has no other means by which to obtain information about the investigation.

As stated on the privilege log, the notes are dated May 13, 2007 and May 28, 2007. There is testimony that the meeting occurred one or two weeks after the April 17 incident and that no notes were taken at the meeting. Thus, it is apparent that the notes were not generated at the investigation meeting. Rather, the notes were taken during witness interviews, at least one at which Mr. Hensen was present. While the Plaintiff is correct that investigations are typically fact-gathering mechanisms, the Plaintiff fails to demonstrate here that she has been unable to gather facts about the April 17 incident from persons who were present before, during and after the delivery. It is

7

undisputed that the Plaintiff has taken the depositions of the nurses and doctors who attended the Plaintiff during her delivery. The Plaintiff has provided no information indicating that these persons had no memory of the April 17 incident or that there is no other means by which to obtain witness information regarding the incident. Accordingly, the Court finds that the four pages of investigation notes prepared by Ms. Goodman are protected from disclosure by the work product doctrine and **denies** the Motion to Compel in this regard.

B. Insurance File

The Plaintiff seeks the contents of the insurance claim file regarding the April 17 incident from BCH. BCH counters that it has no possession, custody or control over the documents contained in the file and, therefore, cannot produce them. Both parties agree that "control" is the "legal right to obtain documents on demand." *See* docket #110 at 9 and docket # 117 at 8.

The Court finds that the Plaintiff has not demonstrated that BCH has a legal right to obtain a claims file directly from COPIC. BCH has provided an affidavit from Nicholas Ghiselli, Senior Attorney for COPIC, who attests that "COPIC's insured entities and retained attorneys have no right or ability to obtain copies of COPIC's claims files" and "COPIC would deny any request from its insured or retained attorneys for a copy of any COPIC claims file." Docket #117-8. Accordingly, BCH itself has no means of obtaining the file directly from COPIC.

The Plaintiff cites several aged opinions from courts outside of this jurisdiction ordering production of third-party documents pursuant to Fed. R. Civ. P. 34 under certain circumstances. The Plaintiff cites the cases in support of its proposition that, as BCH's insurer, COPIC is acting as a party in this case and should be subject to an order pursuant to Rule 34. The Court declines to follow the cases for two reasons. First, the cases are not precedential. Second, most of the cases are factually distinct and, thus, are not persuasive. Only one case, *State Farm Ins. Co. v. Roberts*, 398 P.2d 671 (Ariz. 1965), involves a situation where (like here) the insurer refused to produce the

claims file upon request. However, in *Roberts*, the Arizona Supreme Court analyzed that state's procedural rule in concluding that State Farm was properly ordered to produce a witness statement it had procured. *Id.* at 175-76. The case is not persuasive here.

Rather, based upon the COPIC affidavit, the Court finds that, in the interests of justice and efficiency, the Plaintiff should attempt to obtain the file from the entity claiming sole possession of it in accordance with Rule 45. In that way, the parties are ensured proper process through federal law and rules. The Plaintiff has articulated no undue burden in issuing a subpoena to COPIC; in fact, the Plaintiff mentions that she "will subpoena the claim file and all correspondence" depending upon BCH's position on privilege issues. Docket #122 at 17. Therefore, the Court will **deny** Plaintiff's Motion to Compel production of the COPIC claim file from BCH, but allow the Plaintiff to seek a copy of the file pursuant to Rule 45.

C. Interrogatory No. 7

Plaintiff seeks to know upon whose order a water bottle was given by BCH employees to the Plaintiff during her delivery. BCH asserts that its full response to the interrogatory plainly shows that no order was given by the hospital with regard to the water bottle. While BCH's response is not entirely clear on whether an order was given, the Court finds that the response was appropriately responsive to the interrogatory, and further notes that BCH, in its response brief, confirms that "no order for a water bottle was given or required to be given." Docket #117 at 9. Thus, the Court **denies** Plaintiff's Motion to Compel more information in response to Interrogatory No. 7, but orders BCH to provide a supplemental verified response to the interrogatory with the information provided in the response brief.

D. Mitigation Information

In her Interrogatory No. 15, the Plaintiff seeks information regarding BCH's contention that the Plaintiff has failed to mitigate her damages. BCH counters that the Plaintiff improperly requests

9

its attorneys' mental impressions, opinions and conclusions, but states "Plaintiff may have failed to follow the reasonable medical advice of her treating healthcare providers" and provides that Plaintiff and her healthcare providers may have knowledge of such failure. Docket #110 at 12. BCH further explains that certain healthcare providers, including two of its employees, may have information concerning Plaintiff's failures to keep appointments and follow medical advice.

The Court finds that facts known by a party supporting an affirmative defense (just as those supporting a claim for relief) are certainly relevant and discoverable pursuant to Rule 26. Although BCH contends that Plaintiff seeks its attorneys' mental impressions and opinions, BCH has demonstrated through its argument here that facts exist underlying its mitigation defense which are not privileged. Therefore, the Court **grants** the Motion to Compel in this regard and orders BCH to supplement its response with a more complete verified response to Interrogatory No. 15, including the information provided in BCH's response brief.

### III. Motion to Seal

BCH asks that the Court seal the documents characterized by BCH as privileged and provided to the Court for *in camera* review in response to Plaintiff's Motion to Compel (*see* Section II.A. above). The Plaintiff filed no response nor objection to the motion. Because the documents contain information that is protected from disclosure by the attorney-client privilege and/or work product doctrine, the Court **grants** the motion to seal the submitted documents from public access. However, nothing in this order alters the Court's order that certain information from the submission be disclosed directly to the opposing party.

### IV. Conclusion

Based on the foregoing, and the entire record provided to the Court, I do hereby **grant in part and deny in part** Plaintiff's Motion to Compel Discovery Responses From Defendant Boulder Community Hospital [filed June 8, 2010; docket #110] and **grant** Defendant Boulder Community

Hospital's unopposed Motion to File Under Seal Exhibit in Support of Response to Motion to Compel [filed July 6, 2010; docket #118].

In accordance with this Order, **on or before August 13, 2010**, Defendant Boulder Community Hospital shall

1. Provide a copy of page Zawa-000078 to the Plaintiff, and

2. Provide a verified supplement to its discovery responses to Interrogatory Nos. 7 and 15 containing information as set forth in this Order.

In addition, the Clerk of the Court is directed to maintain under seal those documents found at docket #119 until further order of the Court.

Dated at Denver, Colorado, this 6th day of August, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge